UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

KYLE JOSEPH GREBENOR,

      Petitioner,

v.                                                                Case No.   2:24-cv-515-JLB-NPM

RICKY D. DIXON,

      Respondent.

_____/

## **ORDER**

This cause is before the Court on the 28 U.S.C. § 2254 petition for habeas corpus relief filed by Kyle Joseph Grebenor ("Petitioner"), a prisoner of the Florida Department of Corrections.  (Doc. 1.)  At the Court's direction (Doc. 3), Respondent filed a response (Doc. 8), and Petitioner filed a reply.  (Doc. 10.)

Upon careful consideration of the pleadings, the state court record, and the entire file, the Court concludes that neither of Petitioner's claims entitles him to federal habeas corpus relief.  Because the Court was able to resolve the petition on the basis of the record, an evidentiary hearing is not warranted.  See Schriro v. Landrigan, 550 U.S. 465, 474 (2007).

## I.    Background and Procedural History

On September 8, 2016, the State of Florida charged Petitioner by amended information with five counts of burglary of a dwelling (Counts One, Two, Four, Six, and Nine); three counts of grand theft (Counts Three, Five, and Ten); one count of burglary of a structure (Count Eight); and one count of grand theft of a dwelling

(Count Seven).  (Doc. 9-1.)  Prior to trial, the state orally amended Count Seven to misdemeanor petit theft.  (Id. at 85.)

A jury trial on Counts One, Six, and Seven commenced on December 12, 2016.  (Doc. 9-1 at 9–532.)  The jury found Petitioner not guilty on Count One and guilty on Counts Six and Seven.  (Id. at 534–35.)  The trial court sentenced him as a prison release reoffender to fifteen years' imprisonment on the burglary charge and to time served on the petit theft charge.  (Id. at 537–43.)  On February 15, 2024, Florida's Second District Court of Appeal (DCA) affirmed without a written opinion. (Id. at 613.)

On October 1, 2019, Petitioner filed a motion for postconviction relief under Rule 3.850 of the Florida Rules of Criminal Procedure (Rule 3.850 Motion).  (Doc. 9-1 at 617–68.)  The postconviction court held an evidentiary hearing on three grounds and reserved ruling on the remainder.  (Id. at 698–700, 702–817.)  After the hearing, the postconviction court entered a final order denying all claims in Petitioner's Rule 3.850 Motion.  (Id. at 819–59.)  Petitioner briefed only two issues for appellate review.  (Id. at 861–75.)  On April 15, 2023, Florida's Sixth DCA affirmed.  (Id. at 906.)

## II.    Governing Legal Principles

### A.    The Antiterrorism Effective Death Penalty Act (AEDPA)

Under the AEDPA, federal habeas relief may not be granted with respect to a claim adjudicated on the merits in state court unless the adjudication of the claim:

> (1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly

2

established Federal law, as determined by the
Supreme Court of the United States; or

(2)    resulted in a decision that was based on an
unreasonable determination of the facts in light of
the evidence presented in the State court
proceeding.

28 U.S.C. § 2254(d)(1)–(2).  In this context, "clearly established federal law" consists of the governing legal principles, and not the <u>dicta</u>, set forth in the decisions of the United States Supreme Court at the time the state court issued its decision.  White v. Woodall, 572 U.S. 415, 420 (2014); Carey v. Musladin, 549 U.S. 70, 74 (2006) (citing Williams v. Taylor, 529 U.S. 362, 412 (2000)).

A decision is contrary to clearly established federal law if the state court either: (1) applied a rule that contradicts the governing law set forth by Supreme Court case law; or (2) reached a different result from the Supreme Court when faced with materially indistinguishable facts.  Ward v. Hall, 592 F.3d 1144, 1155 (11th Cir. 2010); Mitchell v. Esparza, 540 U.S. 12, 16 (2003).  A decision involves an unreasonable application of clearly established law if the state court correctly identifies the governing legal principle, but applies it to the facts of the petitioner's case in an objectively unreasonable manner, Brown v. Payton, 544 U.S. 133, 134 (2005), or "if the state court either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply."  Bottoson v. Moore, 234 F.3d 526, 531 (11th Cir. 2000) (quoting Williams, 529 U.S. at 406).

The section 2254(d) standard is both mandatory and difficult to meet.  To

demonstrate entitlement to federal habeas relief, the petitioner must show that the state court's ruling was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." White, 572 U.S. at 420 (quoting Harrington v. Richter, 562 U.S. 86, 103 (2011)).  Moreover, when reviewing a claim under section 2254(d), a federal court must presume that any "determination of a factual issue made by a State court" is correct, and the petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e).

A state court's summary rejection of a claim, even without explanation, qualifies as an adjudication on the merits, warranting deference. Ferguson v. Culliver, 527 F.3d 1144, 1146 (11th Cir. 2008).  Generally, in the case of a silent affirmance, a federal habeas court will "look through" the unreasoned opinion and presume that the affirmance rests upon the specific reasons given by the last court to provide a reasoned opinion.  See Ylst v. Nunnemaker, 501 U.S. 797, 806 (1991); Wilson v. Sellers, 138 S. Ct. 1188, 1192 (2018).  However, the presumption that the appellate court relied on the same reasoning as the lower court can be rebutted "by evidence of, for instance, an alternative ground that was argued [by the state] or that is clear in the record" showing an alternative likely basis for the silent affirmance.  Sellers, 138 S. Ct. at 1196.

### B.    Ineffective Assistance of Counsel

In Strickland v. Washington, the Supreme Court established a two-part test for determining whether a convicted person is entitled to relief on the ground that his counsel rendered ineffective assistance. 466 U.S. 668, 687–88 (1984).  A

petitioner must establish that counsel's performance was deficient and fell below an objective standard of reasonableness <u>and</u> that the deficient performance prejudiced the defense.  Id.  A showing on only one prong will not support an ineffective assistance claim.  Id. at 687 ("Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable.").

The focus of inquiry under <u>Strickland</u>'s performance prong is "reasonableness under prevailing professional norms."  Id. at 688.  In reviewing counsel's performance, a court must adhere to the presumption that "counsel's conduct falls within the wide range of reasonable professional assistance[.]"  Id. at 689 (citation omitted).  A court must "judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct," applying a highly deferential level of judicial scrutiny.  Roe v. Flores-Ortega, 528 U.S. 470, 477 (2000) (quoting Strickland, 466 U.S. at 690).  Proving <u>Strickland</u> prejudice "requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable."  Strickland, 466 U.S. at 687.

## C.    Exhaustion and Procedural Default

The AEDPA precludes federal courts, absent exceptional circumstances, from granting habeas relief unless a petitioner has exhausted all means of available relief under state law.  28 U.S.C. § 2254(b)(1).  Exhaustion of state remedies requires that the state prisoner "fairly presen[t] federal claims to the state courts in order to give the State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights[.]"  Duncan v. Henry, 513 U.S. 364, 365 (1995).  The

petitioner must apprise the state court of the federal constitutional issue, not just the underlying facts of the claim or a similar state law claim. Snowden v. Singletary, 135 F.3d 732, 735–36 (11th Cir. 1998). Under the similar doctrine of procedural default, "a federal court will not review the merits of claims, including constitutional claims, that a state court declined to hear because the prisoner failed to abide by a state procedural rule." Martinez v. Ryan, 566 U.S. 1, 9 (2012).

A petitioner can avoid the application of the exhaustion or procedural default rules by establishing objective cause for failing to properly raise the claim in state court and actual prejudice from the alleged constitutional violation. Spencer v. Sec'y, Dep't of Corr., 609 F.3d 1170, 1179–80 (11th Cir. 2010). To show cause, a petitioner "must demonstrate that some objective factor external to the defense impeded the effort to raise the claim properly in state court." Wright v. Hopper, 169 F.3d 695, 703 (11th Cir. 1999). To show prejudice, a petitioner must demonstrate a reasonable probability the outcome of the proceeding would have differed. Crawford v. Head, 311 F.3d 1288, 1327–28 (11th Cir. 2002).

A second exception, known as the "fundamental miscarriage of justice," only occurs in an extraordinary case, where a "constitutional violation has probably resulted in the conviction of one who is actually innocent[.]" Murray v. Carrier, 477 U.S. 478, 479–80 (1986).

### III.    Discussion

On November 30, 2015, two houses in Collier County, Florida were burglarized. (Doc. 9-1 at 223–224.) On December 8, 2015, Petitioner was arrested by the Collier County Sheriff's Office, and jewelry later identified as belonging to

one of the victims was found in Petitioner's possession. (Id. at 225.) Under a plea

agreement, Petitioner's codefendant, Jerry Currie, testified for the state. (Id. at

368–69.) Mr. Currie testified that, in November of 2015, he and Petitioner would

sometimes drive around looking for empty homes to rob. The state specifically

questioned Mr. Currie about their activities on November 30, 2015 as follows:

> Q. Okay. Tell the jury what occurred when you went to
> each of [the homes robbed on November 30, 2015].
>
> A. We would knock on the door and ask for water because
> my car was overheating.
>
> Q. No. I'm talking about the morning of November 30.
>
> A. Oh, November 30?
>
> Q. Yes.
>
> A. We'd go to the house, knock on the door, see if anybody
> was there. Once nobody was there, Kyle would go
> around back and then get into the house and then he'd
> leave out the front door and then we would leave with
> him having stuff in his backpack.
>
> Q. Okay. What would you do while the defendant was
> inside the house?
>
> A. I would sit in the car, and I would call him if anybody
> would show up. Like I'd keep watch.
>
> Q. To make sure nobody was coming home
> (indiscernible)?
>
> A. Yes, nobody was coming home while he was in there.
>
> Q. Okay. Now, even though you were in the car and he
> was going into the house, you both had the same goal,
> correct?
>
> A. Correct.

Q.  Okay.  And that was to get property out of these homes?

A.  Correct.

Q.  Okay.  Did the defendant enter the homes at both 11th Street Southwest and 15th Street Southwest?

A.  Yes, he did.

Q.  Okay.  And you were there in the driveway of each of those homes with him?

A.  Yes.

(Id. at 376–77.)  In the state's closing, the prosecutor argued that Mr. Currie's testimony, combined with evidence that Petitioner was in possession of some of the stolen property when he was arrested a week after the burglaries, was sufficient to show that Petitioner had entered the burgled homes with the intent to steal.  (Id. at 444–46.)

Petitioner now raises two claims in his habeas petition.  First, he alleges that trial counsel Justin Barger (Counsel) was constitutionally ineffective for failing to investigate and present an alibi defense for November 30, 2015.  (Doc. 1 at 5.)  Next, he asserts that Counsel was ineffective for advising Petitioner against testifying at trial.  (Id. at 7.)  The Court has carefully reviewed both of Petitioner's claims and dismisses or denies them as follows.

A.    **Ground One**

Petitioner argues that the state postconviction court unreasonably denied grounds 1-2 and 1-3 of his Rule 3.850 Motion.  (Doc. 1 at 16.)  In those claims, Petitioner alleged that Counsel was deficient for failing to file a notice of alibi and for failing to call an alibi witness at trial.  (Doc. 9-1 at 619.)  Petitioner alleged that

he was with his friend Jerry Stuckey all day on November 30, 2015 and could not have committed either of the burglaries on that day.  (Id.)  He asserted that the only evidence actually placing him at the scene of the burglaries was codefendant Jerry Currie's testimony.  (Id.)  The postconviction court ordered an evidentiary hearing on the claim.  (Id. at 699.)

Petitioner, Counsel, and potential alibi witness Jerry Stuckey testified at the postconviction evidentiary hearing.  The postconviction court summarized the witnesses' testimony on this issue and denied the alibi claim as follows:

> Jerry Stuckey testified that he was friends with Defendant and had known Defendant for years.  He did not know what Defendant was charged with.  He thought Defendant was charged with something else.  Trial counsel called him.  He had not talked to Defendant before the attorney called.  He dropped Defendant off at the house the day Defendant was arrested.  He told the attorney he was willing to testify at trial if needed.  He did not hear from the attorney again.  He called the office and left messages a few times, but never heard back from the attorney.  On November 30, 2015, Defendant was with him most of the day, and they went to the beach.
> . . .
>
> On cross-examination, Mr. Stuckey testified that he called off of work to go to the beach with Defendant. He did not attend Defendant's trial.  He did not recall Defendant asking him to.  He did not know when the trial occurred. . . . He did not find out that Defendant was arrested for [a] burglary [that occurred] the day he was with Defendant until a friend called about it.
> . . .
>
> Defendant testified that he told [Counsel] about Mr. Stuckey the first time [Counsel] visited him, and asked [Counsel] to contact Mr. Stuckey because he was with Mr. Stuckey on at least two of the days the burglaries were alleged to have occurred, November 30th and December

8th.  [Counsel] said he spoke to Mr. Stuckey and Mr. Stuckey had no testimony of any value.

. . .

[Counsel] testified that he had been a Public Defender for ten years. He contacted Mr. Stuckey by phone. Mr. Stuckey said Defendant was living with him at the time of the offenses, but Mr. Stuckey had no idea of knowing what Defendant did during the day while Mr. Stuckey was at work.  Mr. Stuckey never said he went to the beach with Defendant on November 30th.  Mr. Stuckey was ambivalent about testifying.  [Counsel] testified that he provided this information to Defendant, and Defendant did not mention it again.

. . .

On cross-examination, [Counsel] testified that he had handled at least ten prior felony trials before the trial in this case. . . .When he called Mr. Stuckey, he specifically asked about November 30th.  Mr. Stuckey said Defendant had been staying at his house and sleeping on his couch, but he did not know where Defendant was while he was at work.  Mr. Stuckey had problems identifying dates and times crucial to an alibi defense.  Mr. Stuckey did not want to testify.  [Counsel] stated that there were no notes in the case file indicating Mr. Stuckey had ever called the office.  He did not recall what Defendant said happened on November 30th.  He did not recall the time frame of the burglary on November 30th.

. . .

The Court finds that Mr. Stuckey's sudden recollection of a day at the beach years later, contrary to his more timely recall when he spoke to [Counsel] before trial, is not credible.  [Counsel's] performance was not deficient in not filing a notice of alibi or calling Mr. Stuckey as an alibi witness, when Mr. Stuckey did not provide information establishing an alibi before trial.

(Doc. 9-1 at 820–23.)  The Sixth DCA affirmed the postconviction court's rejection of this claim without a written opinion.  (Id. at 906.)  Accordingly, this Court looks through the Sixth DCA's summary affirmance and presumes that the affirmance

rested upon the specific reasons given by the postconviction court.  Sellers, 138 S. Ct. at 1196.

Here, Counsel's testimony was in direct conflict with that of Mr. Stuckey. Therefore, the postconviction court was left with a "swearing match" that required it "to make a credibility choice and resolve the dispute between the conflicting testimony adduced at the evidentiary hearing." Nejad v. Att'y General, Georgia, 830 F.3d 1280, 1292 (11th Cir. 2016) (internal quotation marks omitted). Specifically, Counsel testified that Petitioner never offered Mr. Stuckey as an alibi witness before trial. (Doc. 9-1 at 776.) Counsel also testified that the only time they spoke, Mr. Stuckey told him that he did not know where Petitioner was on November 30, 2015. (Id. at 776–77, 786.) Counsel averred that he specifically asked Mr. Stuckey about November 30th "because that was the day in question," but that Mr. Stuckey had "trouble identifying certain dates and times crucial to our alibi defense." (Id. at 786–87.) Counsel said that Mr. Stuckey was reluctant to testify at trial. (Id. at 777, 787.) Counsel had no record of Mr. Stuckey attempting to call his office after they spoke. (Id. at 791–792.) In stark contrast to Counsel's testimony, Mr. Stuckey said that when they spoke, Counsel asked him only about the day of Petitioner's arrest and that they did not discuss November 30th, the day of the burglaries, at all. (Id. at 715, 738.) Mr. Stuckey stated that he "never actually discussed November 30, 2015" with Counsel because Counsel's interest was elsewhere. (Id. at 732.) Only later did Mr. Stuckey learn that Petitioner was arrested for a crime that occurred on November 30, 2015, so he attempted to call

Counsel to let him know that he could provide Petitioner an alibi for that date.  (Id. at 718.)  Petitioner testified that, around the first time he met with Counsel, he told Counsel to contact Mr. Stuckey about an alibi.  (Id. at 757–59.)

It is clear that the postconviction court, "[h]aving listened to the testimony live and observed the demeanor of the witnesses," credited Counsel's testimony over that of Petitioner or Mr. Stuckey and concluded that Mr. Stuckey did not tell Counsel that Petitioner was with him on the day of the burglaries.  Nejad, 830 F.3d at 1292.  Petitioner argues that the state court's rejection of this claim was unreasonable because Counsel's "initial conversation with Stuckey was cursory and did not provide Stuckey with sufficient information to ascertain whether he was with Petitioner on the day in question."  (Doc. 1-1 at 6.)  Petitioner also argues that "the state court's characterization of Stuckey's testimony as sudden and incredible was an unreasonable determination in light of the facts presented in the state court proceeding."  (Id. at 7.)  He asserts that both Counsel and Mr. Stuckey testified to a conversation and that "Stuckey's detailed testimony further showed his recollection was not sudden and that he exercised due diligence in both attempting to contact [Counsel] and attempting to rectify [Counsel's] lack of diligence by providing Petitioner with a notarized affidavit."  (Id. at 6.)

A district court on habeas review has "no license to redetermine credibility of witnesses whose demeanor has been observed by the [state] court, but not by them," which is precisely what Petitioner asks us to do here.  Consalvo v. Sec'y, Dep't of Corr., 664 F.3d 842, 845 (11th Cir. 2011).  Simply put, a state court's credibility

determination is a finding of fact. Consalvo, 664 F.3d at 845 ("We consider

questions about the credibility and demeanor of a witness to be questions of fact.").

And "[s]tate court fact-findings are entitled to a presumption of correctness unless

the petitioner rebuts that presumption by clear and convincing evidence." Conner

v. GDCP Warden, 784 F.3d 752, 761 (11th Cir. 2015). The high measure of

deference accorded to state court factual findings "requires that a federal habeas

court more than simply disagree with the state court before rejecting its factual

determinations." Marshall v. Lonberger, 459 U.S. 422, 432 (1983). Instead, the

habeas court "must conclude that the state court's [factual] findings lacked even fair

support in the record." Id. (quotation and alteration omitted). And as noted above,

there is more than fair support in the evidentiary hearing transcript to support the

postconviction court's conclusion that Counsel was more credible than either

Petitioner or Mr. Stuckey.

Underscoring the plausibility of the postconviction court's credibility

findings—and undercutting Petitioner's argument that Mr. Stuckey's "notarized

affidavit" somehow saves the day—is the fact that Mr. Stuckey's "detailed

testimony" at the evidentiary hearing not only conflicted with Counsel's testimony,

it also conflicted with Mr. Stuckey's own statements in the referenced affidavit. In

that affidavit, which was sworn under penalty of perjury, Mr. Stuckey stated:

> I . . . told [Counsel] that on 11/30/2015 [Petitioner] was
> with me the whole day and I remember this because I
> called in sick that morning and picked up [Petitioner] at
> our friend "Andy Durwin's" house and took him to meet
> his friend at Rattlesnake and 41 and then we went back
> to Marco Island. We then went to South Beach where we

> drank coronas and threw a football on the beach.  I didn't drop [Petitioner] off until 5:30 or 6:00 pm so it would have been impossible for [Petitioner] to have committed any burglaries on that day.  I let his attorney know I would testify to all of this and was available and waiting on his call.

(Doc. 9-1 at 667.)  In sum, Mr. Stuckey's sworn testimony regarding what he and Counsel discussed during their only meeting changed dramatically between his affidavit, where he said that he gave Counsel detailed descriptions of his activities with Petitioner on the day of the burglaries, and his evidentiary hearing testimony, where he testified that Counsel did not even ask him about that day.

After carefully reviewing the entire record, including the evidentiary hearing transcript, the Court finds ample support for the postconviction court's factual determination that both Petitioner and Mr. Stuckey were less credible than Counsel.  And given that Counsel was unaware of a plausible alibi for November 30, 2015 and believed that Mr. Stuckey was reluctant to testify at trial, the state court reasonably concluded that Counsel was not ineffective for failing to call him as an alibi witness.  See Rizo v. United States, 662 F. App'x 901, 914 (11th Cir. 2016) (recognizing that defense counsel's "duty to investigate . . . was dependent on the information he received regarding the potential alibi witnesses"); United States v. McCoy, No. 98-207, 2005 WL 8159961, at * 2 (E.D. La. Apr. 15, 2005) (["T]rial counsel's failure to call certain alibi witnesses suggests a realistic appraisal of the implausibility of [petitioner's] alibi theory, rather than deficient performance.").

Petitioner has not shown that the state courts' rejection of Ground One was contrary to clearly established federal law or based on an unreasonable

determination of the facts.  Therefore, Petitioner is not entitled to federal habeas relief on Ground One.  28 U.S.C. § 2254(d).

### B.    Ground Two

In his second claim, Petitioner asserts that Counsel was ineffective for advising him not to testify at trial.  (Doc. 1 at 7.)  Petitioner states that his failure to testify was especially damaging because one of the jury instructions stated that "[p]roof of possession by an accused of property recently stolen by means of a burglary, unless satisfactorily explained, may justify a conviction of burglary[.]"  (Id. at 20.)  He claims that the lack of an explanation for his possession of the items stolen from one of the burgled houses "effectively left him with no defense."  (Doc. 1-1 at 8.)  Petitioner argues that his "own testimony would have fully explained his possession of the jewelry.  At the time of the burglaries, Petitioner sold drugs and would accept anything for payment."  (Id. at 9.)  Therefore, he would have testified that "Currie traded the items to him in exchange for drugs."  (Id.)

Respondent argues that Petitioner procedurally defaulted this claim because, although he raised it in his Rule 3.850 Motion and an evidentiary hearing was held, he was also required to expressly appeal the denial of this claim in his Rule 3.850 Motion, which he did not do.  (Doc. 8 at 30–31.)  Respondent is correct.  See Pope v. Rich, 358 F.3d 852, 854 (11th Cir. 2004) (explaining that the exhaustion requirement applies to the state collateral review process as well as the direct appeal process).  Under Florida law, a petitioner who receives an evidentiary hearing on his Rule 3.850 Motion is required to file an appellate brief raising each specific Rule 3850 claim.  See Fla. R. App. P. 9.141(b)(3)(C).  A petitioner's failure to

expressly address an issue in an appellate brief constitutes a waiver of the issue.

See Cortes v. Gladish, 216 F. App'x 897, 899–90 (11th Cir. 2007) ("In contrast, had Cortes received an evidentiary hearing, his failure to address issues in his appellate brief would constitute a waiver."); Williams v. McDonough, No. 802CV965T30MAP, 2007 WL 2330794 (M.D. Fla. Aug 14, 2007) (petitioner procedurally defaulted claims by failing to address them on direct appeal of Rule 3.850 order after evidentiary hearing); Coolen v. State, 696 So. 2d 738, 742 n.2 (Fla. 1997) (concluding that failure to fully brief and argue points on appeal "constitutes a waiver of these claims").

Petitioner concedes that this claim is unexhausted (Doc. 1-1 at 11), but argues that his failure to exhaust is excused under the Supreme Court's holding in Martinez v. Ryan, 566 U.S. 1 (2012). In Martinez, the Supreme Court held that—if the state court did not appoint counsel in the collateral proceeding, or if collateral-review counsel was ineffective—a petitioner may overcome procedural default by "demonstrat[ing] that the underlying ineffective-assistance-of-trial-counsel claim is a substantial one, which is to say that the prisoner must demonstrate that the claim has some merit." Id. at 14. However, the Martinez Court was careful to restrict its holding to a petitioner's failure to raise ineffective assistance of counsel in the initial-review collateral proceeding in state court. The ruling in the case does not excuse a petitioner's failure to appeal a claim that was, as here, actually raised in the postconviction proceeding. Id. at 16 ("The holding in this case does not concern attorney errors in other kinds of proceedings, including appeals from initial-review

16

collateral proceedings[.]").  Accordingly, Ground Two must be dismissed as unexhausted.

Even if this claim had been properly exhausted, it would be denied on the merits.  See 28 U.S.C. § 2254(b)(2)("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.").[1]  First, the record confirms that the ultimate decision of whether to testify at trial rested with Petitioner, not Counsel. The trial court advised Petitioner that he had a right to testify and be a witness at trial.  (Doc. 9-1 at 405–07.)  Petitioner stated under oath that his decision not to testify was his own and that nobody threatened, forced, or coerced him to make the decision.  (Id. at 410.)  The record is devoid of any evidence suggesting that Petitioner was subjected to coercion or undue influence, or that his decision not to testify was anything other than knowing and voluntary.  See Lambrix v. Singletary, 72 F.3d 1500, 1508 (11th Cir. 1996) (explaining that without evidence of continued coercion, the court cannot assume petitioner's "apparent acquiescence to a trial strategy in which he did not testify was anything but voluntary").

Neither does the record support Petitioner's contention that he did not testify because Counsel misadvised him that the jury would learn about the nature of his prior convictions.  As noted by the postconviction court, Counsel testified that he informed Petitioner of his right to testify and told him that whether to do so was

---

[1] Likewise, to the extent Petitioner argues that this is a "new" ineffective assistance claim to which Martinez applies, the Court finds that the claim is not "substantial."  Martinez, 566 U.S. at 14.

solely his (Petitioner's) decision.  (Doc. 9-1 at 822, 778).  Counsel said that he told

Petitioner that the prosecutor could ask him about the number of his prior

convictions, but if he answered honestly, the inquiry would end.  (Id. at 822, 779–

80.)  Counsel further testified that he would have called Petitioner as a witness if he

knew that he wanted to testify.  (Id. at 780.)  In contrast, Petitioner testified that

Counsel told him that he (Petitioner) "would have to admit to the jury that [he] was

arrested for attempted burglary in 2012" if he took the stand.  (Id. at 754–55.)  By

denying this claim (id. at 820–23), the postconviction court—which had the

opportunity to assess the demeanor and testimony of both Counsel and Petitioner—

determined that Counsel was a more credible witness.  And Petitioner does not offer

"clear and convincing evidence" to rebut the presumption of correctness afforded

this factual determination.  28 U.S.C. § 2254(e)(1); see also discussion supra Ground

One, Part III(A).

Finally, Counsel testified that, even had he known that Petitioner wanted to

testify that he accepted stolen jewelry as payment for providing illegal drugs to his

codefendant, he would have advised Petitioner against doing so.  The state

specifically questioned Counsel about Petitioner's desire to testify that he was in

possession of the stolen jewelry as payment for drugs:

> Q. Did the defendant tell you that he wanted to explain
> the jewelry that was found on him by saying that the
> co-defendant bought drugs off of him and gave him the
> jewelry in exchange for that?
>
> A. No, he did not.
>
> Q. If he had told you that, would you have thought that
> was a good thing for him to testify to?

A. No, not necessarily.

Q. And why is that?

A. Admitting to the sale of narcotics is not necessarily going to play favorably with the jury.

Q. But if he had insisted on wanting to testify to that, would you still have called him?

A. Absolutely.

(Doc. 9-1 at 780–81.)  On cross-examination, Counsel affirmed that he thought Petitioner's testimony would impair his case and that Petitioner fluctuated about what he wanted to say.  (Id. at 796, 797.)

Reasonable competent counsel could have advised a client against testifying about (and facing cross examination on) other criminal activities.  Counsel could have reasonably concluded that evidence of Petitioner's trade as a drug dealer and his willingness to accept stolen property as payment for illegal drugs—combined with his conviction on at least one prior felony—would have been damaging to the defense.  And advising Petitioner against testifying to such would have been sound trial strategy, which is virtually unassailable on federal habeas review.  See United States v. Garnes, 102 F. 4th 628, 640–41 (2d Cir. 2024) ("Evidence of other crimes that a defendant has committed, or 'other-crime evidence,' can create unfair prejudice in that it can lead a jury to convict a defendant because of his participation in the other crimes rather than because he is guilty beyond a reasonable doubt of the crime alleged." (internal quotation marks omitted));  Scott v. McDonough, No. 4:06cv533-SPM/AK, 2008 WL 3852688, at *8 (N.D. Fla. Aug. 15, 2008) ("It was not . . . ineffective assistance of counsel for Petitioner's attorney not

to want to draw attention to the 'other crimes' evidence[.]"); Hendricks v. Calderon,
864 F. Supp. 929, 937 (N.D. Cal. Jun. 2, 1994) (noting that trial counsel must
"assess the degree of prejudice that the other crimes evidence might create").

In addition to being subject to dismissal as unexhausted, Ground Two is
denied on the merits because it does not satisfy Strickland's performance prong.

## IV.    Conclusion

Based on the foregoing, Petitioner is not entitled to relief on any habeas claim
presented here.

Accordingly, it is **ORDERED** that:

1.    The 28 U.S.C. § 2254 petition filed by Kyle Joseph Grebenor is
      **DENIED**.

2.    The Clerk is **DIRECTED** to enter judgment in favor of Respondent
      and against Petitioner, deny any pending motions as moot, terminate
      any deadlines, and close this case.

### Certificate of Appealability[2]

A prisoner seeking a writ of habeas corpus has no absolute entitlement to
appeal a district court's denial of his petition. 28 U.S.C. § 2253(c)(1). Rather, a
district court or circuit justice or judge must first issue a certificate of appealability
(COA). "A [COA] may issue . . . only if the applicant has made a substantial
showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make

---

[2] Pursuant to Rule 11(a) of the Rules Governing Section 2254 Cases in the
United States District Courts, the "district court must issue or deny a certificate of
appealability when it enters a final order adverse to the applicant."

this substantial showing, a petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Slack v. McDaniel, 529 U.S. 473, 484 (2000), or that "the issues presented [are] adequate to deserve encouragement to proceed further." Miller-El v. Cockrell, 537 U.S. 322, 336 (2003). When, as here, the district court has rejected a claim on procedural grounds, the petitioner must show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Slack, 529 U.S. at 484.

Upon consideration of the record, the Court declines to issue a COA. Because Petitioner is not entitled to a COA, he is not entitled to appeal in forma pauperis.

**DONE AND ORDERED** in Fort Myers, Florida on January 8, 2025.

_John L. Badalamenti_
JOHN L. BADALAMENTI
UNITED STATES DISTRICT JUDGE

Copies: All Parties of Record